FILED

FEB 2 9 2016

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

1

2          UNITED STATES BANKRUPTCY COURT

3          EASTERN DISTRICT OF CALIFORNIA

4

5   In re:                          )   Case No. 15-27642-B-7
                                    )
6   ANGELA DENISE FERREIRA,         )
                                    )
7                                   )
                    Debtor(s).      )
8   _____ )

9

10       **MEMORANDUM DECISION ON MOTION OF THE UNITED STATES
    TRUSTEE TO DISMISS CASE PURSUANT TO 11 U.S.C. §§ 707(b)(1)
11                   AND 707(b)(3)(B)**

12  **Introduction**

13       Presently before the court is a motion by the United States

14  trustee to dismiss this chapter 7 case pursuant to 11 U.S.C. §§

15  707(b)(1)[1] and 707(b)(3)(B).[2]  Debtor Angela Denise Ferreira has

16

17  _____

18  [1]Section 707(b)(1) states, in relevant part:
    After notice and a hearing, the court, on its own
19  motion or on a motion by the United States trustee,
    trustee (or bankruptcy administrator, if any), or any
20  party in interest, may dismiss a case filed by an
    individual debtor under this chapter whose debts are
21  primarily consumer debts, or, with the debtor's
    consent, convert such a case to a case under chapter 11
22  or 13 of this title, if it finds that the granting of
    relief would be an abuse of the provisions of this
23  chapter.

24
    [2]Section 707(b)(3)(B) states, in relevant part:
25  (3) In considering under paragraph (1) whether the
    granting of relief would be an abuse of the provisions
26  of this chapter in a case in which the presumption in
    paragraph (2)(A)(i) does not arise or is rebutted, the
27  court shall consider—
    [ . . .]
28  (B) the totality of the circumstances (including
    whether the debtor seeks to reject a personal services

opposed the motion.  The United States trustee replied to the debtor's opposition.

The court has reviewed the motion, opposition, reply, and all related declarations and exhibits.  Pursuant to Federal Rule of Evidence 201, the court takes judicial notice of the docket in the above-captioned chapter 7 case and the docket in the debtor's prior chapter 13 case filed in this court as case no 15-24131 on May 21, 2015, and dismissed on September 27, 2015.  The court also treats the debtor's letter dated January 4, 2016, Exhibit 3 to the United States trustee's motion, as an admission by the debtor under Federal Rule of Evidence 801(d)(2).

A hearing on the motion was held on February 23, 2016. Appearances were noted on the record.  The court heard and considered the statements and arguments of counsel made during the hearing.  This memorandum decision constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a) made applicable by Federal Rules of Bankruptcy Procedure 7052 and 9014.  For the reasons explained below, the United States trustee's motion will be GRANTED.

**Jurisdiction and Venue**

Federal subject-matter jurisdiction is founded on 28 U.S.C. § 1334. This matter is a core proceeding that a bankruptcy judge

---

contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

may hear and determine. 28 U.S.C. §§ 157(b)(2)(A) and (O).  To

the extent it may ever be determined to be a matter that a

bankruptcy judge may not hear and determine without consent, the

parties nevertheless consent to such determination by a

bankruptcy judge.  28 U.S.C. § 157(c)(2).  Venue is proper under

28 U.S.C. § 1409.


**Background**

The debtor filed a voluntary petition for relief under

chapter 7 of the Bankruptcy Code on September 30, 2015.  The

debtor also filed the required Schedules and Statement of

Financial Affairs with her petition.  The debtor's petition

states that her debts are primarily business debts.

The debtor's Schedules list total debt of $165,127:

Schedule D lists a $38,496 loan secured by the debtor's 2013

Acura MDX; Schedule E lists two tax claims totaling $32,500; and

Schedule F lists $94,129 in general unsecured claims of which

$53,123 are student loans the debtor incurred to attend nursing

school, leaving a remaining non-student loan balance of $41,006.

There is no dispute that the debtor's Acura loan ($38,496)

and the non-student loan general unsecured claims ($41,006) are

consumer debts.  Undisputed consumer debts thus total $79,502

which translates to 48.14% of total debt.

The present dispute concerns the proper classification of

the debtor's student loan debt of $53,123.  The United States

trustee asserts the student loan debt is - in whole or at least

20% attributed to child care and travel expense - consumer debt.
The debtor maintains her student loan debt is non-consumer or
business debt.  If the United States trustee is correct, the
student loan debt plus the other undisputed consumer debt will
exceed 50% of the total debt which means the debts in this case
are "primarily consumer debts."  Zolg v. Kelly (In re Kelly), 841
F.2d 908, 913 (9th Cir. 1988)("Thus, when 'the most part'--i.e.,
more than half--of the dollar amount owed is consumer debt, the
statutory threshold [of § 707(b)] is passed.").  If the debtor is
correct, the United States trustee will have failed to satisfy
its burden of demonstrating the debts in this case are "primarily
consumer debts" because consumer debt will remain below the 50%
threshold, in which case the motion to dismiss must be denied.

**Statement of Facts**[3]

The debtor incurred the $53,123 in student loans listed in
her Schedules to pay for nursing school.  According to the
debtor, she incurred the student loans to "get an education" in
the nursing profession and avail herself of additional employment
and business opportunities.  The debtor borrowed the maximum
amount of $10,000 per year and those funds were paid directly to
the debtor and not an educational institution.

_____

[3]The debtor did not dispute the relevant facts recited by
the United States trustee in her opposition.  See LBR 9014-
1(f)(1)(B) ("Failure to file the separate statement [of disputed
material factual issues] shall be construed as consent to
resolution of the motion and all disputed material factual issues
pursuant to Fed. R. Civ. P. 43(c).").  And the evidentiary record
closed when the reply was filed.  See LBR 9014-1(f)(1)(C).

- 4 -

The debtor was unemployed while she attended nursing school. Debtor's counsel confirmed this on the record during the hearing held on February 23, 2016.  Because she was unemployed, the debtor states she received food stamps and shared a bedroom with her grandmother while she attended nursing school.

The debtor is unable to document how she spent the student loan funds.  She estimates that she used $3,000 per semester (or $6,000 per year) for tuition and $1,000 per semester (or $2,000 per year) for books and supplies.  Since the debtor was unemployed while she was enrolled in nursing school, and consistent with statements in the debtor's letter of January 4, 2016, the court can infer that the remainder of the student loan funds - $2,000 per year - were used for travel and child care expenses.  These calculations create a ratio whereby 80% of the student loans - or $42,498.40 - were used for direct education expenses and 20% - or $10,624.60 - were used for travel and child care expenses.

The debtor is now employed as a nurse with the University of California, Davis.  According to the debtor's pay advices, the debtor's gross monthly income is $12,335.74 which is a little more than $148,000 annually.  The debtor's monthly "take home" pay is $6,251.83.

The debtor drives a 2013 Acura MDX for which she pays $942 per month, plus an additional $485 per month for insurance and operating expenses.  The debtor makes voluntary contributions of

$969.32 per month to a retirement plan.[4]  She pays $450 monthly towards student loans.  The debtor also spends $375 per month on telephone, internet, and cable.[5]  And she spends $280 per month on entertainment and recreation.[6]  The debtor also claims a $100 per month employment education expense and a $150 per month pet food and care expense in this case that were not claimed in the chapter 13 Schedule J filed four months earlier.

The United States trustee has calculated, and the debtor did not dispute, that, at a minimum, by eliminating or reducing the Acura payment and voluntary retirement contributions, and by

---

[4]The debtor filed a chapter 13 petition on May 21, 2015, case no. 15-24131, and with her petition she filed a proposed chapter 13 plan.  Citing Parks v. Drummond (In re Parks), 475 B.R. 703 (9th Cir. BAP 2012), on June 30, 2015, the chapter 13 trustee objected to confirmation of the debtor's plan on the basis that "[t]he debtors' [sic] voluntary post-petition retirement contributions [of $801 per month] are disposable income under 11 U.S.C. § 547(b)(7) and therefore such income must be applied to make plan payments under 11 U.S.C. § 1325(b)(1)." Stating in civil minutes filed on July 21, 2015, that it intended to follow Parks the court sustained the chapter 13 trustee's objection and denied confirmation of the debtor's plan in a civil minute order entered on July 24, 2015.  Two months later, on September 25, 2015, the debtor filed an ex-parte application to dismiss her chapter 13 case which the court granted in an order filed on September 27, 2015.  Three days after the debtor's chapter 13 case was dismissed, the debtor filed this chapter 7 case on September 30, 2015. She increased voluntary contributions to her retirement plan from $801 claimed in her prior chapter 13 case to $969.32 now claimed in this case.

[5]This is a $45 per month increase from the $330 per month the debtor claimed in the chapter 13 Schedule J she filed four months earlier.

[6]This is a $98 per month increase from the $182 per month the debtor claimed in the chapter 13 Schedule J she filed four months earlier.

paying unsecured student loan debt pro-rata with all other

unsecured claims, the debtor would have net monthly income of

$769.55.　Elimination of or reductions to the internet, phone,

and cable expense and the monthly discretionary spending for

entertainment and recreation would also increase the debtor's net

monthly income.

**Discussion**

There are two prerequisites to dismissal under § 707(b)(1):

(i) the debtor has primarily consumer debt; and (ii) the

bankruptcy court finds that granting the debtor's petition would

be an abuse of chapter 7.　Price v. U.S. Trustee (In re Price),

353 F.3d 1135, 1138 (9th Cir. 2004) (citation omitted).　The

Bankruptcy Code defines consumer debt as "debt incurred by an

individual primarily for a personal, family, or household

purpose."　11 U.S.C. § 101(8).　The Ninth Circuit "look[s] to the

purpose of the debt in determining whether it falls within the

statutory definition."　Kelly, 841 F.2d at 913 (citation

omitted); see also Price, 353 F.3d at 1139; Stine v. Flynn (In re

Stine),254 B.R. 244, 249 (9th Cir. BAP 2000)("It is the purpose

for which the debt was incurred that determines whether it is a

consumer debt.") (citation omitted).　"Debt incurred for business

ventures or other profit-seeking activities is plainly not

consumer debt for purposes of section 707(b)."　Kelly, 841 F.2d

at 913.

The moving party bears the burden of proof to support a

§ 707(b)(1) motion by a preponderance of the evidence. <u>Aspen Skiing Company v. Cherrett (In re Cherrett)</u>, 523 B.R. 660, 668 (9th Cir. BAP 2014) (citation omitted). The debtor, however, bears the burden of demonstrating a profit motive in order to establish that a debt is nonconsumer or a business debt. <u>In re Palmer</u>, 542 B.R. 289, 297 (Bankr. D. Colo. 2015); <u>see also</u> <u>In re Liegey</u>, 2009 WL 3817902 at *4 (Bankr. M.D. Pa. 2009).

<u>Primarily Consumer Debts</u>

The United States trustee appears to initially argue that student loans are or should be per se consumer debt because education is a benefit inherently personal, that is, it is instilled in a person's mind and can never be separated from the person. <u>See</u> <u>In re Stewart</u>, 201 B.R. 996, 1004 (Bankr. N.D. Okla. 1996) ("<u>Stewart I</u>"); <u>see also</u> <u>In re Millikan</u>, 2007 WL 6260855 at *5 (Bankr. S.D. Ind. 2007). The United States trustee cites no case in which a court has held that student loans are per se consumer debt and conceded during the hearing none were found.[7] In that regard, the court agrees with <u>In re Rucker</u>, 454 B.R. 554 (Bankr. M.D. Ga. 2011), to the extent that court declined to adopt "a per se rule to characterize student loan debts as

_____

[7]The "<u>Stewart</u>" line of opinions came close. In <u>Stewart I</u>, the bankruptcy court announced that "student loans in general should be treated as 'consumer debt,' at least absent unusual facts or factors[.]" <u>Stewart I</u>, 201 B.R. at 1005. The Tenth Circuit Bankruptcy Appellate Panel affirmed, but declined to adopt a per se rule. <u>Stewart v. United States Trustee (In re Stewart)</u>, 215 B.R. 456, 465 (10th Cir. BAP 1997) ("<u>Stewart II</u>"). The Tenth Circuit Court of Appeals affirmed and was also skeptical of per se rule. <u>Stewart v. United States Trustee (In re Stewart)</u>, 175 F.3d 796, 806 (10th Cir. 1999) ("<u>Stewart III</u>").

consumer debt or non-consumer debt under § 707(b)."   Therefore,
the court declines to adopt a per se rule that holds all student
loans are always consumer debt.

The court also questions whether it is appropriate to
apportion a debt into consumer and non-consumer components and
then count the consumer component under § 707(b)(1).   The United
States trustee has not cited a published opinion or unpublished
decision in the Ninth Circuit in which an individual debt was
apportioned and counted in that manner.   On the contrary, at
least one court in the Ninth Circuit has held this approach is
improper.   See In Hopkins v. Marble (In re Kempkers), 2012 WL
4953076 at *2 & n.5 (Bankr. D. Idaho 2012).

In Kempkers, the court examined the meaning of "consumer
debt" under § 101(8) in the context of § 547(c)(9).   Recognizing
that it was instructed by the Ninth Circuit to determine a debt's
primary purpose, the court stated:

> [T]he language of § 101(8) is clear that a [sic]
> individual debt is either entirely a consumer debt or
> it is not. That provision requires that a debt be
> categorized as a 'consumer debt' if the debt was
> incurred 'primarily for a personal, family, or
> household purpose.' (emphasis added). Put another way,
> dividing a single debt into both consumer debt and
> non-consumer debt is inappropriate; the total amount of
> a debt will be counted as consumer debt, even if a
> portion of it was incurred by the debtor for a business
> purpose.

Id. at *2 (emphasis in original).[8]

_____

[8]The court also noted that its conclusion was consistent
with a leading treatise discussing the apportionment issue. See
Id. at n.5 (citing 2 COLLIER ON BANKRUPTCY ¶ 101.08 (Alan N.
Resnick & Henry J. Sommer eds., 16th ed.) ("If a debt is incurred
partly for business purposes and partly for personal, family[,]

The court in <u>Kempkers</u> did, however, recognize that the Fifth Circuit has taken a different approach to classifying debt. <u>Id</u>. at n.5. In <u>In the Matter of Booth</u>, 858 F.2d 1051 (5th Cir. 1988), the Fifth Circuit counted a portion of a loan secured by a mortgage as consumer debt but attributed the balance of the same loan to non-consumer debt because part of the loan had been used by the debtor in a business venture. <u>Id.</u> at 1055. Apparently, the Tenth Circuit does the same thing. <u>See</u> <u>Stewart III</u>, 175 F.3d at 806-807. And so has at least one lower court. <u>See</u> <u>In re McDowell</u>, 2013 WL 587312 at *7 and n.5 (Bankr. S.D. Tex. 2013).

In this case, the court need not decide whether the debtor's student loan debt may or should be apportioned into consumer and non-consumer or business components. The court need not make that determination because the debtor has failed to satisfy her burden of demonstrating that she incurred any of the student loan debt with the necessary profit motive. Put another way, the debtor has failed to carry her burden of proof on the question of whether her student loan debt is non-consumer or business debt and, thereby, excluded from the definition of consumer debt under § 101(8) for purposes of § 707(b)(1).

The profit motive element in the consumer debt analysis is interpreted narrowly. In <u>Cherrett</u>, <u>supra</u>, the BAP looked to the

---

or household purposes, the term 'primarily' in the definition suggests that whether the debt is a 'consumer debt' should depend upon which purpose predominates ... a debt should be fully classified as a consumer debt or business debt according to its primary purpose."). <u>Cherrett</u> appears to support this conclusion as well in that it cited the 15th edition of <u>Collier</u> for a nearly identical proposition. <u>Cherrett</u>, 523 B.R. at 670.

primary purpose of the debtor's home loan.  Upon finding the home

loan was related to the debtor's employment, the BAP concluded

that the home loan was not a consumer debt for purposes of §

707(b)(1).  The BAP noted that the debtor hoped to realize a

profit from the house and that the home loan was an integral part

of his employment compensation package.  In reaching its

conclusion, the BAP stated:  "[C]ourts generally ascribe a

business purpose, rather than a personal, family or household

purpose to debts which are incurred 'with an eye toward profit'

and which are 'motivated for *ongoing* business requirements."  Id.

at 669 (emphasis added, internal quotations and citations

omitted).

Although Cherrett's "ongoing" business requirement arose in

the context of a home loan, the court in Palmer, supra, adopted

that narrow interpretation of the profit motive and applied it to

a student loan.  The court stated:

> [I]n order to show a student loan was incurred with a
> profit motive, the debtor must demonstrate a tangible
> benefit to an *existing* business, or show some
> requirement for advancement or greater compensation in
> a *current* job or organization.  The goal must be more
> than a hope or an aspiration that the education funded,
> in whole or in part, by student loans will necessarily
> lead to a better life through more income or profit.
> More than hindsight representations are needed to meet
> this burden.

Palmer, 542 B.R. at 297 (emphasis added).

The court in Palmer cited four rationales for its decision,

and to support its adoption of Cherrett's narrow interpretation

of the profit motive.  Quoted at length because of their

significance, those are as follows:

In determining a standard to use when dealing with an intangible asset such as a student loan, this Court finds that the following concepts are important:

1) The Tenth Circuit's reference to profit motive should be interpreted narrowly, in the context of whether student loans are consumer or non-consumer for the purposes of § 707(b). This is in keeping with the intent of the changes made to the Code in 2005. The so-called 'means test' ushered in by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ('BAPCPA') is based on the fundamental notion that 'those who have the means to repay their creditors in whole or in part should do so.' In re Millikan, 2007 WL 6260855 at *6. The purpose of the means test is to 'weed out chapter 7 debtors who are capable of funding a chapter 13 case.' In re Fredman, 471 B.R. 540, 542 (Bankr. S.D. Ill. 2012). The means test and the provisions of § 707(b) apply only to an individual chapter 7 debtor 'whose debts are primarily consumer debts.' In re Peterson, 524 B.R. 808, 811 (Bankr. S.D. Ind. 2015). The term 'consumer' should be interpreted in the context of the Act in which it appears.

2) In Stewart II, the BAP noted there *may* be cases 'in which the debtor can demonstrate that the student loan was incurred purely or primarily as a business investment, albeit an investment in herself or himself, much like a loan incurred for a new business.' 215 B.R. at 465 (emphasis added). 'May' is a word of limitation and means not applicable to all situations. Trying to determine, on a case-by-case basis, which set of facts equates to a business investment, rather than a personal investment, will be problematic without a narrow, objective standard to apply.

3) If the profit motive is not interpreted narrowly, it can be applied to virtually all student loans. It becomes an exception that swallows the rule. This is aptly pointed out in the Millikan case, where the court expressed concern with allowing a debtor, in hindsight, to recast the motive for incurring the debt. In many cases, education is initially undertaken for self-improvement purposes; the fact the education also may lead to increased earning potential is often a fortunate side benefit. This is why courts have struggled with applying the profit motive test to student loans:  people go to school for many different reasons, and evaluating a given student loan debt according to the student's motivation can lead to disparate or unfair results. A student loan incurred by an altruistic law student seeking to work for a

non-profit should not, in equity, be viewed or treated
differently than a loan incurred by a career-conscious
law student seeking to work for a large, private law
firm.

4) A narrow standard, tied to an existing business, or
to some requirement for advancement in a current job or
organization, is necessary to avoid a student's
aspirational goal, or a wished-for 'hope and dream'
being the focus, as opposed to the advancement of a
tangible opportunity. See, e.g., Norwest Bank
Worthington v. Ahlers, 485 U.S. 197, 204 (1988)
(analyzing 'vague hopes or possibilities' in the
context of plan confirmation, and holding the 'promise
of future services is intangible, inalienable, and, in
all likelihood, unenforceable,' having 'no place in the
asset column of the balance sheet.').

Palmer, 542 B.R. at 296-297 (internal footnotes omitted, emphasis
in original).

The court finds Palmer and its rationales for a narrow

interpretation of the profit motive tied to an *existing* business

purposes or an advancement in a *current* job or organization

persuasive. Palmer is rooted in, and it builds upon, Cherrett.

In that respect, Palmer is consistent with authority from within

the Ninth Circuit. A narrow standard that looks to an "existing"

business or "current" employment also places debtors on equal

footing. And, in this case, it eliminates the concern expressed

by the debtor that, as a single parent, she is treated

differently than an unmarried debtor with no dependents.

Turning to this case, the court is not persuaded that the

debtor has met her burden of demonstrating that she incurred her

student loans for an existing business or for current job

advancement. The debtor was unemployed when she attended nursing

school and she enrolled in the nursing program to "get" a nursing

degree.   Thus, by the debtor's own admission, there was no
ongoing business related to nursing and it was not necessary for
her to attend nursing school to advance in an existing job.

If anything, the debtor's evidence <u>negates</u> that she incurred
her student loans for a profit motive and supports a conclusion
that she pursued a nursing degree for the personal purpose of
benefitting herself and her lifestyle.   Whereas before the debtor
obtained her nursing degree she required public assistance and
shared a single bedroom, as a direct result of her student loans
the debtor now makes in excess of $148,000 per year.   The debtor
drives a luxury vehicle for which she is able to pay almost one-
thousand five-hundred dollars per month (including payment,
insurance, and operating expenses).   She is able to make
voluntary contributions just short of one thousand dollars per
month to her retirement plan.   She spends almost four hundred
dollars a month on telephone, internet, and cable.   And she can
afford nearly three hundred dollars a month for discretionary
entertainment and recreational spending.

After reviewing the entire record in this case, the debtor
has not carried her burden of demonstrating that her student
loans were incurred for a profit motive.   Therefore, the student
loan debt that the debtor incurred to pursue her nursing degree
is personal in nature and a consumer debt under § 101(8) for
purposes of §§ 707(b)(1) and 707(b)(3)(B).

<u>Abuse</u>

The United States trustee presented substantial evidence of

abuse in that the United State trustee has sufficiently

demonstrated that by modifying and/or eliminating certain

expenses the debtor would have approximately $800 per month with

which to repay creditors.  And that's a conservative estimate.

As noted above, the debtor did not dispute the United States

trustee's calculations or the facts or evidence upon which those

calculations are based in her opposition.  Therefore, as to this

part of the §§ 707(b)(1) and 707(b)(3)(B) analysis, the court

concludes that the United States trustee has carried its burden

of showing abuse under the totality of the circumstances.  Kelly,

841 F.2d at 915 ("But a finding that a debtor is able to pay his

debts, standing alone, supports a conclusion of substantial

abuse.").

## Conclusion

The debtor has failed to carry her burden of proving that

she incurred her student loans with a profit motive.  That

permits the court to treat the entirety of the debtor's student

loan debt as consumer debt.  And when the amount of student loan

debt of $53,123 is added to the $79,502 in other undisputed

consumer debt, the debtor's total consumer debt is $132,625 which

is over 80% of the total debt of $165,127.  That, of course, is

well over the 50% threshold required under § 707(b)(1) to make

the debts in this case "primarily consumer debts."

The court also finds that the United States trustee has

carried its burden of demonstrating abuse under §§ 707(b)(1) and

707(b)(3)(B), and that granting relief in this case would be an abuse of chapter 7.  The debtor did not dispute that with minor adjustments to her expenses and spending, she has the ability to repay her creditors.

Therefore, the United States trustee's motion to dismiss this chapter 7 case under §§ 707(b)(1) and 707(b)(3)(B) will be GRANTED and within fourteen days of the date of the entry of the order entered on this memorandum decision the debtor shall convert her case to one under chapter 13 of the Bankruptcy Code, failing which this chapter 7 case shall be dismissed.

A separate order will issue.

Dated:   February 29, 2016.

UNITED STATES BANKRUPTCY JUDGE

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

   The Clerk of Court is instructed to send the attached
document, via the BNC, to the following parties:

Mikalah R. Liviakis
2377 Gold Meadow Way, #100
Gold River CA 95670


Jason M. Blumberg
501 I St #7-500
Sacramento CA 95814